We will hear argument first this morning in Case 23-1197, Lander v. Louisiana Department of Corrections and Public Safety. Mr. Tripp. Mr. Chief Justice, and may it please the Court, it is undisputed that my client has alleged an assault that is just brazenly illegal. He was at respondents' mercy in federally funded custody when he handed them a copy of controlling precedent holding that RLUIPA protected his right to keep his hair long. They threw it away, handcuffed him to a chair, and shaved him bald. It is the poster child for a RLUIPA violation, and the law provides a damages remedy. This is spending legislation, so I want to go right to that and make two points about clarity and constitutionality. So first, on clarity, the whole point of this law is to restore pre-Smith rights and remedies. Damages were available before Smith, they're available under RFRA, and RLUIPA uses identical language. They're like twins separated at birth. They clearly mean the same thing. The individual capacity action is especially clear. On the face of the statute, it expressly authorizes suit against an official or any other person acting under color of state law. That obviously means individual capacity. And then once you see there's an individual capacity action, the rest of it falls into line, because the whole point of individual capacity is to have damages. Damages are presumptively available against a non-sovereign, and without damages, officials can literally treat the law like garbage. On constitutionality, it is undisputed. Respondents admit they must comply with RLUIPA within the scope of their work as officers in a federally funded state prison. And this Court has already held in Salinas that officers in a federally funded state prison can be held individually liable for misconduct that threatens the integrity or proper operation of the program, and that describes this case to a T. So RLUIPA's clear, it's constitutional, and we're asking the Court to reverse. I welcome the Court's questions. Do you have examples of causes of action for damages that are viable as a result of the exercise of spending power? I mean, I think there's many statutes that have causes of action under the spending clause. I mean, under Tlaibsky, this Court held that it was enforceable under Section 1983. We also give a long list in our brief of spending clause actions that include civil liability running all the way back to the founded. I mean, we give an example of a 1789 law. How would you get to the authority under the spending clause to create these damages actions that you suggest? So I think there's sort of two paths. Or in this case. In this case, I think there's two paths to do it. One is to follow the path that this Court has set forth in Salinas, in particular Salinas, Dixon, Laudani, and Hess, and to just hold that. What was Salinas about? Salinas was about an officer in a federally funded state prison who accepted a bribe to provide preferential treatment. Isn't there a difference between a bribe and a lawsuit for individual damages? Well, he was being held individually liable for criminal penalties, which I think is something that clearly requires the necessary and proper clause in addition to just ordinary civil liability. But I thought the argument there was that if you provide the funds, you have a right to protect it. I mean, I think that protection of funds, well, maybe sort of two things. First, in Salinas, when the Court was describing the thing that was interfering with the proper operation of the program, it wasn't the acceptance of the bribe. It was the preferential conjugal visit. It was the misconduct itself. And so just applying the test that Salinas set forth. And I think, actually, my friends don't- It's clear there were no federal funds at issue. The bribe was going into a correction officer's pocket. That's right. There was no diversion of federal funds. No risk to the government's money.  No risk to the government's money. That's certainly not direct. If anything, it was prophylactic. And here, I think it's really much more direct. Slow down, counsel. All right. The question there, then, was the risk to the government program. Correct? Correct. And here, the risk is to what? To the government program, to accommodate religious liberty. I mean, that's the heart of this program under RLUIPA, is if you want federal funds for state prisons, you need to accommodate religious liberty. Now, going back to Justice Thomas' question about other statutes that are at risk, if we were to hold that you can't bind third parties, I have dozens of them cited by you and the government, where we've permitted causes of action with damages, Title IX, Title VI, the Federal Nursing Home Reform Act, the Emergency Medical Treatment Act, the anti-fraud statutes. There's a long list of statutes where we said the statutes can bind third parties. Correct? Correct. All right. Thank you. Counsel, the basis for state liability here is, of course, an agreement with the federal government, right? In other words, they've cut a deal, get the money, and they're going to have to comply with these conditions. But there was no such arrangement with the defendant in this case, right? They didn't have a direct relationship with the federal government. They didn't get directly any federal financial assistance. So you don't have the same basis for liability as we do in the other typical spending clause case, right?  It's indirect, right? Because the officer, and what this court said in Rust is that if a person goes to work for a federally funded program, then they take the job subject to the conditions that Congress has attached to the funds. And, of course, I think they're already admitting, again, that they're bound by the substantive condition, really by virtue of their choice to voluntarily work as officers in a federally funded program. And so I think it's that sort of the chain of privity is the thing that makes this case considerably easier, I think, than a case like Sabri or some others where you're trying to reach somebody who's a member of the general public. Because these are not members of the general public. They're state officers. They voluntarily accepted this job. They each have all of their own employment contracts, and they take it subject to that condition. I think one thing that's also sort of relevant is that as state officers in a prison, individual capacity damages are the norm for them. We have an amicus brief from former corrections officials who talk about how, of course, this is something that they're all trained on. Everybody understands this because under Section 1983, individual capacity damages are just the paradigmatic remedy. But the hard part, as I see it for your case, for me, is that you need a clear statement and appropriate relief. You know, it's not as clear as it could be in encompassing damages. So how do you deal with that? I don't want to water down our precedent on that. But at the same time, I want to hear your response to how you get there. Yeah, I think it's sort of the first thing, and I'd love for you to look at it, is just to lay eyes on the individual capacity action. It's in the PEDAP at 41A. It's got a cause of action. It's titled Judicial Relief is the name of the statute, and then subsection A, Cause of Action. A person may assert a violation of this chapter as a claim of defense and judicial proceeding to obtain the appropriate relief against the government. Who is the government? You go in a few pages, and it says an official or any other person acting under color of state law. And that's just obviously individual capacity. Tanzen already says this. It says that it provides a clear answer, and the text is identical. And then I think once you see there's... On Tanzen, I'm not sure it quite says clear answer. I think it says it's the best answer. It's a traditional answer. I'm not sure it quite says... Sorry, one step. On individual capacity... Oh, yes. I'm talking about damages. Yes, and then once you see there's individual capacity, because I think it's expressed on the face of the statute... I'm asking about damages. Right. Then at that point, the Franklin presumption kicks in because you have a cause of action against a non-sovereign. And the ordinary rule at that point is where there's a right, there's a remedy, right? There's a right. Congress has created expressly the cause of action, and damages are presumptively available unless Congress says otherwise. It then taps into the very deep tradition that Tanzen sets out of individual capacity liability that goes all the way back to the early republic. That's what these have always been for, is to obtain damages. And if you can't obtain damages, the individual capacity action is totally meaningless. You can already enjoin them in their official capacity. So the only thing you get is damages. And then I think also when you look at just the operation of this statute, the statute just doesn't actually provide its promised protection in a large set of cases if damages are not available. And it's not just this case. I mean, I think if you go through the amicus briefs, there are many situations, some very ugly ones, where effectively the statute is ineffective. And I think one of the things that's particularly troubling about the way Respondent's Rule would work is that the very officers who are, like, violating the law can also basically unilaterally decide to turn it off by transferring the prisoner to a different facility. And so even if – so even in a case where injunctive relief might be helpful, they can move it out by transferring the person. On that point, and then I want to get back to the Chief Justice's question, as I understand it, the circuits are unanimously against you and have been for many, many, many years. So saying that something awful is going to happen, it's whatever's happened has happened, right? That's correct. It's happening. Yeah. And it's been this way for a very long time in every circuit in the country. That's correct. And on the Chief Justice's question, I'm struggling – where I'm struggling is where did the defendant, the individual defendants, agree with the federal government to be bound? And what notice do they have? And I understand your point earlier to the Chief that they're subject to state regulations and with their contract with the state. And, of course, an agent can be liable to his principal for violating what the principal dictates. But the agent isn't normally liable to a third party for a breach of the principal's duties with respect to a third party. So even when the agent causes the breach, even when the agent negotiates the contract, he's not liable to the third party. He's only liable to the principal. So if we're looking at the background contract principles, to the extent they're relevant, and maybe you're going to tell me they're not, that's fine. But to the extent we would, it wouldn't seem to encompass these defendants. And every circuit in the court – every circuit court in the country would appear to be correct. So help me with that. Yeah, I think what that's missing – we traced this out in our opening brief – is that contracts are extraordinarily flexible. And you can, and people do. Ah, yes. Okay. Your brief does go into that, that Congress could have easily written a statute that does this and says that those individual officers have to agree with the federal government to be bound under federal law. I agree. It could have done that. And you say it could have done this in 15 different ways in your brief. I agree with you. My concern is it didn't do that. It could do that, but it didn't do that. It left it to the states. I think that's really where I fundamentally disagree. I think Congress did do it. What it said in this statute is that, first of all, obviously the states need to accommodate religious liberty. And then it is clear as day that if you agree to be an officer or other person acting under color of state law in this statute, and you deprive a person of their religious liberties in violation of this statute, then you are subject to suit where you will be the defendant and a cause of action for appropriate relief. That is on the face of the statute. And the individual officers, they can agree to take the job or not. They can demand higher wages. They can demand indemnity like Louisiana gives it. And I think one of the things that really breaks down in their argument is they admit that it applies to them. They admit that they need to comply within the scope of their work. And it comes not just with the substantive condition, but also with a remedial one. And then I also do want to just come back to, in this Court's precedence, it's made clear that Congress can combine the spending power with the necessary and proper clause to impose liability, I mean criminal liability in Salinas. Well, I don't doubt it could. And I don't doubt that when it's protecting its money, as in some of those cases, that that interest is clear. What I'm struggling with is did it, not could it, did it. Did these individual defendants have notice? Did they agree? Would you agree that the individual defendants have to have notice? I think the way this Court's precedence works, the notice runs to the state and then as defendants. So the defendants don't have to have notice. Why don't they have notice? If I might just finish, I'm sorry. Do the defendants have to have notice? Yes or no? If I could be clear, it depends on which way you think about it. There's one way to think about it. It runs all the way through consent. And then, of course, they need notice because they took the job. They have to take it subject to the condition. Counsel, it's just really simple. Do the individual defendants have to have notice? They have to have notice of the condition when they sign up to it. And do they have to consent to the conditions? I mean they consent by virtue of taking the job, yes. Do they have to consent? By taking the job, yes. Is that a yes they have to consent or is that no they don't? Under this court's, sorry, I just want to be clear about this. I just want to know what your answer is. My answer is that they did consent here. That if you're going to think about this purely as a matter of consent, which we traced through in our opening brief, then, of course, they need to consent. I think this court's cases go farther. Mr. Sabry did not consent. I understand the fraud cases. But I'm asking, do they need to consent? I'm hearing maybe, maybe not. Not under this court's cases. Thank you. This court's cases go farther. Can I follow up with that just on the facts of this case? Because as I understand your argument, we do have both notice and consent under these circumstances given that these individuals as third parties are not just people in the world. They are employees of the recipient of federal funds. And so to the extent that the recipient of federal funds has made clear with the federal government that it's going to require its employees to comply with RLUIPA and not violate people's rights, then when those employees decide, choose, consent to accept a job with that employer, they are thereby consenting to follow those agreements. Is that right? That is exactly right. And I think that's why when this court has had these cases, Salinas, Dixon, Hess, Laudani, it's a whole line of cases involving officers, agents, employees, subcontractors, where this is chain of privity. Every time the court has, I think, actually seen this. And Salinas said there was no serious doubt. This is not a hard case. Because chain of privity is a classic contracts concept. So that even if you thought that contracts was governing this, we have individuals who, for example, I mean, I suppose, let me just give you a hypothetical. What if the prison in this situation actually appends to its employment contract all of the conditions that it has agreed to with the federal government? And, of course, the prison can only operate under its employees' direction, not direction, but because there are employees. In other words, the prison doesn't have its own activity. So to the extent that it agrees with the federal government that it's going to comply with RLUIPA, it's saying I and my employees, the agents that I employ, are going to do this. And so let's say the prison actually appends to its employment contract all of the conditions that the federal government requires for the receipt of federal funds so the person who is choosing to be an employee is totally apprised of what it is that is required as a condition of employment. I understand your argument to be that that would be sufficient, even if we assume that there has to be notice and consent, to satisfy any such agreement. Of course. And I think what this Court has said in Russ v. Sullivan and then in Alden v. Maine as to state officers specifically is when you go into this job, when you go into this line of work and you voluntarily agree to be an officer in a federally funded state program, then, yes, you implicitly, you necessarily take it subject to the conditions that Congress has attached to the funds. Thank you, Counsel. Your answer that you've just given to my colleague is based on legal fiction, right? If you're hired as a prison guard in Louisiana, you don't sit down, and I don't even know if Louisiana does, saying, oh, here's our agreement with the federal government, which probably goes on for I don't know how many pages, and you should look at it carefully because you're bound by it. That's not what happens as a matter of practice. And I don't think when the prison guard is hired he says, well, I want to see the federal conditions that you agreed to under the contract. I mean, I certainly doubt that anything like that happens, but we do have the amicus brief of the former corrections officials that talks about how there is training on compliance with federal law, that individual capacity damages are the norm. And, again, they're not disputing that they need to comply with RLUIPA's substantive condition in the scope of their work, and I think what they haven't come up with is any kind of reasoned explanation why Congress can impose the condition on them, but then can't enforce it, especially through civil liability, when this court in Salinas, Dixon, Hess, and Laudani has already done that and actually gone farther, and I think SABRI goes considerably farther. Thank you, Counsel. Justice Thomas? Are we to analyze this any differently under the spending clause than we would under one of the enumerated powers? I think that the spending clause, of course, impacts the analysis. I think it impacts this. How does it impact? Well, I think from this court's cases and, like, Dole, among other things, that there needs to be clear notice, which is why I started there, and I think it's been fully provided. Do we throw out in that analysis the contract analogy or framework? I think the contract analogy is a helpful framework, I think, for understanding the scope of the spending clause alone, but this court has made clear, and respondents are not asking you to overrule any of your precedents. This court has made clear repeatedly that Congress can also combine spending with necessary and proper, and I think one of the things that's unusual about this case is that this is within Congress's power either way you look at it, because of the chain of privity gets you there on consent, and then Salinas gets you with necessary and proper. I mean, Salinas is criminal liability, which is never available by a contract, whereas this is just civil. This is an ordinary remedy available as a matter of contract. I think this is really much more in the heartland of Congress's power. Justice Alito, just out of curiosity, did this prison shave the heads of all of the prisoners? As I understand it, yes, that was the rule. They shaved the heads. They didn't allow any type of, even a short haircut. I guess I can't speak to the length. As I understand it, the rule across the board was everybody who comes in gets their hair cut, and I think it's really the paradigmatic example of the kind of inflexible and unyielding rule that Congress, in enacting this statute, was trying to get states to stop if they wanted to accept federal funds that they needed to accommodate religious liberty. If the language of Riolupa was not clear enough to abrogate sovereign immunity in Sosamoan, why is it clear enough to satisfy the spending clause? I think it's really two answers. The first is, as Tanzan explained and this Court has said many times, you always understand text in context, and the context of what's appropriate in a suit against a sovereign is very different than the context of what's available against an individual. This Court said this in Sosamoan. It also said it in Tanzan. The tradition as to a sovereign, of course, is you don't get damages, but as to an individual, this is a tradition that runs all the way back to the founding. I mean, damages have always been available in that context, and so I think the context is probably the clearest answer. I think there's also some suggestion, if you compare Franklin and Sosamoan, that the clear notice standard on the spending side is not as demanding as the sovereign immunity, but I think you don't need to get into that because the contextual difference is so clear. Well, why should it be less demanding under the spending clause? When the question is whether Congress has abrogated sovereign immunity, the question is whether Congress has done something to itself. When the question is whether Congress has imposed a condition on the state, the question is whether Congress has done something to another sovereign. Why shouldn't the standard be at least as strong when it is doing something to another sovereign, to the employees of another sovereign? So on that, first of all, Sosamoan was as to another sovereign, right? It was as to the state, and I'm not fighting that. I think I'm comfortable with it being the same standard, but I think we have the clarity. It's drawn from context, and I think one of the things that's very different about this case and this Court's other recent cases in this area is this is not an implied right of action. There's nothing implied here. This is not implied enforcement through Section 1983. This is an express right, an express remedy. It expressly runs against an individual, and as Tanzen said, the distinction from the sovereign context is obvious. To the extent that prison officials have been doing things that violate RIA LUPA but wouldn't violate the Free Exercise Clause, who is to blame for that? The conduct on the ground? Well, who is to blame for the situation that allows that to happen? I mean, I think under this Court's decision in Employment Division against Smith, there is some daylight, and the crux of this law, I think, is that Congress wanted to ensure that any state prison that accepted federal funds, this is the heartland of the law, provided greater accommodations, provided pre-Smith protections, and damages were vital to the pre-Smith scheme, as Tanzen made clear. Justice Sotomayor? I see the issues here on two levels. The first is, is it clear that an individual is bound by the statute? Is there an express cause of action? And that's clear. It says anyone can bring a suit against a government official or someone acting under a color of state law, correct? Correct. So the second step is, is it clear that the cause of action includes money damages? That's the next step of the analysis, right?  And your argument, I believe, is that Tanzen says that appropriate relief against individuals always includes damages. So does Franklin in a long list of our jurisprudence, correct? That's correct. That's the traditional rule is that damages are available unless Congress says otherwise. So those two things are clear. So in terms of contract principles or causes of action, this is clear. Now, what our colleagues, and I think that was Justice Gorsuch's question, is slightly different, which is, do we need to create special rules under the spending clause? Because generally speaking, if you're a prison official, you know you're working in a prison and you're bound by law to pay damages if you violate the law, do you get an out because what? I think the consent question means what? Or notice and consent means what? And I don't know, meaning we're all presumed to know the law. When we take our jobs, the correction officers know he can't accept money. Citizens know they can't pay the money. We don't expect them to consent to that spending clause condition, do we? I think one of the things that makes this case so much easier is that you have the consent of the person to become an officer in a federally funded program. I agree, but I don't know why you need that. I think that's what you were saying, which is, we never think of needing some expressed consent to say I'm bound by the law. I think really the hard question in most of the court's spending clause cases is, can Congress impose the condition on that person? That's really the question in Sabri. Can Congress actually impose the condition on that person? That can be a hard question, but it's not here. They admit at page 46 of their brief that they are bound by the substantive condition. Your point is if they're bound to the injunctive and declaratory judgment relief, then they're bound to the money debt. It's an exceedingly small step. It's not even a step. This court has gone well beyond it, and I think you can easily get there as a matter of even just as contract principles. Thank you. Justice Kagan? Mr. Tripp, the questions you've been getting, you know, is there enough consent, is there enough notice, I presume, tell me if I'm wrong, would those questions apply just as well to any 1983 suit against a state employee? I mean, I think a lot of the notice questions are going to the sort of spending clause layer. Yeah, but, of course, 1983 we've said applies when a statute is based on the spending clause power. We said that most recently in Tlefsky, and there are other cases. So if we take ourselves out of the RLUIPA context for a second, we just put ourselves into the context of some other spending clause statute which doesn't have its own cause of action, but where the cause of action is 1983, presumably you would have the exact same questions about, I don't know, does the state employee know about this? Has the state employee consented to it? And yet we've never thought about those questions in that context, have we? That's right. I think you don't ask that follow-on question. And there was no additional question about notice in Salinas. There was no additional question about notice in Sabri. I don't think there was either in Dixon-Hasselhoff, Dan, as you run down the line. I'm just sort of saying that out of the RLUIPA context, the 1983 statute used to enforce spending clause statutes, we just take for granted that, of course, you can bring a suit against a state employee. That's correct. And then it's like why would the rule be any different under RLUIPA? I don't think it should be. Justice Gorsuch? In fact, in Medina, we said the spending clause adds a layer to 1983. And in terms of notice and consent, suppose a federal statute said something like this. If a coach at a federal funds-receiving university allows biological men on a women's sports team, a female trying to make the team could sue for $1 million. Or an employee of a federal funding recipient in a state agency dealing with family affairs gets an abortion, the father can sue the employee for $1 million. I think on your theory, those are perfectly fine without any particular notice to the individual employee or any particular consent by the employee. Maybe I can come back to one of the answers I gave before. The rule we're articulating has four ingredients. You need to have a valid condition that applies to the person. They need to be an officer within the scope. And then it needs to threaten the integrity of the program. I think under your hypotheticals, the real question is the first one. Can you actually attach the condition to that? Let's assume you can. Let's assume they're germane. And they might be germane in terms of, for example, the student athlete might well be germane to a concern about discrimination against women that a federal funding program might well take into account under Title VI, for example, or the employee for the health and human services. A pro-life Congress might well think that's germane, and we might well find it so. So take it as given that they're germane. I can come up with other examples if you want me to. I just want to be clear that this court's dole test is already sort of addressing these concerns. So there's obviously the relatedness requirement, but then it also can't be coercive. Then you can't have an independent constitutional bar. Suppose there's no constitutional problem with these. And then if these people qualify as officers, which is not clear to me that they will. Let's say they do. Then yes, because the answer would be. I think I missed one step. And then within the scope, which I think you have, and then it would need to threaten the integrity and operation of the program. And I think it is telling you that if, if, and this is the big if. I think, Mr. Tripp, where you're winding up is the spending clause is no different than the commerce clause. I really don't think that's correct, Your Honor, because the crux, the most important condition on the dole side is you can't have coercion. The state needs to go into it eyes wide open. And I believe in your hypotheticals the person needs to take the job eyes wide open. And so there are two. Those are very significant checks that mean this is never going to get to this. Both exist. Both of those checks exist in my hypotheticals. And Congress could pass such laws. And that's quite a stretch of the spending clause. We've never before said anything like that. I mean, if this court wants to cut back on some of the sort of front line sort of scope, maybe you could do that in some future case like that. I'm not talking about cutting back anything. I'm talking about what nine circuits have uniformly done since RLUIPA's passage about 30 years ago. Yeah. And I want to be clear that once Congress and I'm not going to back down on this at all. Once Congress can impose the condition on the person. I wouldn't expect you to do it. Once they can impose the condition within the scope of their work. And that can be a hard question. It's a hard question. But here it's not. And once they can impose the condition, they can enforce it. That's the only step that we're asking about here. We're not asking you to change any law on the front end about what Congress can and cannot do in the first instance. Justice Kavanaugh? Back to the question on clear authorization regarding damages in particular. You rely heavily on Tanzen for that. But even after Tanzen, to pick up on Justice Gorsuch's point about the courts of appeals, the courts of appeals have continued to reject the position you're articulating here even in the wake of Tanzen. And Chief Judge Sutton's opinion in Ali is emblematic of that and says even after Tanzen, you still don't have the clear, express, unequivocal, unambiguous authorization for damages. And so my question really is just why are judges, to Justice Gorsuch's question, misreading the precedents that are out there in your view? Yeah, I'm glad you asked that. Maybe two points where I think Judge Oldham has the better of this with all due respect to Judge Sutton. And honestly, the first thing that I said, Judge Sutton, if you look at his opinion in Ali and also his prior opinion in Haight v. Thompson, he did not ask the question of whether there's an individual capacity action. He goes right into the sort of appropriate relief analysis. And I think that is just a critical step because once you see that there's an individual capacity action, then you have an express right, an express cause of action expressly against a private party. And then whether damages are appropriate relief, I mean, that's the norm. That's what individual capacity actions are for. If you don't have it, the individual capacity adds nothing. It's totally meaningless. And I think it's because Judge Sutton sort of overlooked that first step in the analysis that I think Judge Oldham has the better of it. I also think that when you're asking, once you're actually turning to the question of, okay, we have the individual capacity action. We're trying to figure out what is appropriate relief. Another thing that Judge Oldham hit really hard, which is very powerful, is the whole point of this law, which everybody knows, is to go back to the Priest-Smith scheme and provide the same rights and remedies that were available, including in the original RFRA, which this Court said, made clear, must include damages against state officials. And so I think that the parallel, I mean, you're hardly even separate statutes, right? Like RFRA and RLUIPA, they work together as an integrated whole. And so to understand them, I think that really the only way to understand their operation together is as providing the same rights and remedies within their scope. I mean, RLUIPA, Congress was crystal clear in RLUIPA about the places where it needed to trim its sales because this was spending legislation. It's on the face of the statute. It's not RFRA 2. It's the Religious Land Use and Institutionalized Persons Act. It only applies to institutions that accept federal funds. That's on the face of the statute. It's clear as day. But if you look in at the substantive provisions and the remedies and you look, well, how have those changed because this is spending legislation? The answer is not at all. The rights and the remedies are the same. The whole point of this statute is to get back to the Priest-Smith scheme. The whole point of the spending clause jurisprudence is you need more of a clear statement to get all the way there for damages. And I think really what I'm saying is that, and this Court has said this many times, is the question is, is it unambiguous? And to answer that, there's no magic words requirement. You read text in light of context like you always do. And if you do that and you start by asking, is there an individual FASCI action, clearly yes. And just to summarize your position, individual capacity action with appropriate relief equals clear authorization for damages, correct? What I'm saying is the first step is individual capacity action, you have it, and then the question becomes, well, what's appropriate relief in an individual capacity action? I think the answer to that is clear. It's actually, Tanzen says, I know it's not applying a clear statement rule, but its language bespeaks clarity each step of the way. It said that Congress made clear that RFRA must provide damages, that there was no doubt damages were available before Section 1983, that it was going back, and then again the distinction to the sovereign context where damages are not available, really because of the special rule in the context of suits against sovereigns, right? The whole, the crux of Sassemon was that it could distinguish Franklin. It distinguished the Franklin presumption because it doesn't apply to sovereigns. Thank you. Justice Barrett? Mr. Tripp, how could it have been clear to states when every circuit, as Justice Gorsuch pointed out, every circuit had said that there were not damages actions available against non-recipients under ALUPA? That's also true under the Title IX context. So it's hard to see how it could be clear to the states that were accepting the money or the prisons accepting the money that it was a clear condition when all of the law went the other way. What would your response to that be? I think a couple responses. The first, what this Court has demanded every time, and I've said this before, is unambiguous text in light of the context. And this Court has never applied any kind of like canon of adverse possession where if the courts of appeals are saying something— If you were a lawyer to the states and that was the state of the law, and the state asked you about that, what would you have said? I think the key here is to look at the time when the statute was enacted, right? Which is the key question, right, is what did it mean when it was enacted? And if you look at it when it was enacted and you pick it up and you read it, I think as just a state officer working in a federal— It's so obvious that every single circuit to look at the question went the other way. It's hard to see how it's clear if every circuit is coming out differently. And I think this is actually an important point because the prevailing rule in the circuits, including the Fifth Circuit below where this case is coming from, they didn't deny that there was clear notice. They said it would be unconstitutional because they thought that the officers were like— they treated them as non-recipients even though they're basically indirect recipients and it didn't sort of see that they fit within the— Well, not every circuit brought up the constitutionality question, but putting that aside, can you identify—putting aside the bribery cases, can you identify any cases in which a non-recipient of funds was held individually liable under a federal statute? I mean, I think in Grosse City College v. Bell, you're reaching an indirect recipient. In Salinas, Dixon, Hess, and Londani, those are all situations where you're reaching— You can just say that, yes, it would be a different factual scenario. I don't have a case that's on this exact factual scenario. I admit that, but I think actually this is like a lesser included of Salinas and it's way inside SABRI. But I said to put aside the bribery cases. If I could push back on that a little bit, I think that's important. The crux of this program is to provide federal funds to prisons that accommodate religious liberty. Well, no, I asked you to put them aside because I wanted you to put them aside and look at the civil liability context for a minute. I think that SABRI and Salinas are the best cases for you, particularly SABRI. I take that. But if those are distinguishable, I wanted to ask you the other question, and I think the answer is no. And I think, and I just kind of want to clarify your answer to Justice Gorsuch, look, the facts of this case are egregious. So if on the facts we were looking for a case in which there should be money damages, this is it. Justice Gorsuch asked you a series of harder facts, harder factual scenarios in which we might think, I'm not sure if money damages as a policy matter make as much sense in that context. You never really gave him an answer, yes or no. And so I just want to say I want you to give me an answer, yes or no. On Justice Gorsuch's hypotheticals, and don't fight the hypothetical about the conditions and all that, your theory means that, yes, the coach, the doctor could be held liable. Yes, but if, let me recall about it. Yes or no. The condition. No, no, no, Mr. Tripp, Mr. Tripp. He asked you to assume that the conditions, that it was perfectly consistent with the spending clause. So yes or no, would your theory say that, let's talk about the coach under Title IX. On Justice Gorsuch's hypothetical. If the condition is valid. Yes, yes, yes. If the condition attaches, Congress can enforce it. And I think the crux of the question is. Okay, but just say yes or no, yes or no. You don't want to say yes or no. Just take the consequences. It's totally fine if those are the consequences. But I think you have to follow the logic where it leads. And the logic where it leads is that, yes, under Title IX, say, Congress could pass a statute or Congress could say that it's going to rely on its spending power to hold the coach liable under the hypothetical Justice Gorsuch gave you, right? Yes. Yes. Yes. If, but if, but I think this is. I just don't see how you could say no, given the assumptions he asked you to make about the spending clause. But I want to be clear. One of the reasons I've been articulating this rule under Salinas, right, which is these four ingredients, valid condition officer within the scope and threatening the program is it doesn't require you to address. I think some of these there are heard of hypothetical. Mr. Tripp, every time we decide a case, we have to think about what it's Salinas and Sabri. You know, if they had looked ahead to this case, might have said, yeah, this might be where the logic leads or you take a few steps from here. And this is where it goes. We can't decide a case just based on these facts. So you just need to own it. No, no. And I own that. I want to be clear about that. But what I'm saying, and the reason why, especially in our reply brief, we're relying heavily on Salinas is you've already said all of this. And so we're not asking the court to break new ground. But you're not making. Well, okay. And why does it?  Logically speaking, why is it? Why does it have to be individuals or officers? Why couldn't you, for example, say that a school district, schools that take federal money, if they do and we want to – why couldn't liability extend, say, to parents who choose to send their kids to those schools? Let's think about, like, if a child is transitioning, say, and the parent says, you know, no, I'm not going to facilitate that. I'm not going to call the child a different name or call the child by different pronouns. Could there be some sort of cause of action that would allow, say, the child to sue the parent for civil liability? Why does it have to be an officer or an employee under your theory? Because of the consensual contractual nature of agreeing to work as an officer for a federally funded program. That point. Right. And so I think when you're reaching a member of the general public, which is what your hypothetical is talking about, it is a totally different set of questions that we're not remotely touching. I think that's what Sabri gets at, is how far can Congress go into reaching members of the general public? Those are hard questions, and we're not asking you to go anywhere near them. And why doesn't your logic require it? Because you want to rely on the contract analogy for that point. Like, you're just sticking on the contract road. Because of the contract road, and they admit the condition applies to them, and it's because of the contract, because they've agreed to take the job subject to this condition. And we know that that's voluntary all the way down, right? The state is voluntarily accepting the funds. They're voluntarily taking this job. A person who takes this job might want to demand higher wages or indemnity or things like that, but that's already the norm for them, and they already provide the, you know, indemnity is the norm in Louisiana law in most states. What about other contracts, though? I mean, what if you, you know, contract for services with a hospital because you're a patient? What if you contract? I mean, I guess I don't understand why it has to be an employee. I think the piece about being an employee, and this is what's picked up in Russ versus Sullivan and Alden versus Maine as to state officers in particular who also take an oath to comply with the federal constitution and laws, is that you are sort of taking the job sort of subject to the conditions, the sort of terms that attach to the work. It's different than being just like a stranger to the counterparty in a contract. I know that in Hess, United States market central Hess, that's a situation where you're reaching somebody who's a subcontractor through the sort of a chain of privity, and so the court has addressed that in some other cases, but again, I think this one's easier because of just the nature of the work. Okay, speaking of the layers of consent, this is just a technical question. The Fifth Circuit talked about the warden and the secretary of state. Were the guards actually defendants? Because here, are the guards before us? We don't have their names. They're John Doe's. They're John Doe's, but the Fifth Circuit didn't talk about them. The Fifth Circuit talks about the warden and the secretary of state saying they couldn't be seen in their individual capacities. The warden is, I mean, the factual allegations in the complaint involve the warden specifically. Okay, so the warden knew, okay, so the Doe's are not before us. The Doe's are before you. It was dismissed. We don't know who they are. We don't have their names. And in terms of layers of contract, is the contract with the state of Louisiana or with LDOC or with the prisons? So the way RLUPA works is the Department of Corrections. Okay, so it's LDOC. Yeah, I just wanted to understand how that worked. Thanks. Justice Jackson? So can I invite you to reflect back to Justice Thomas' question? And you said that there were two paths to getting to your results, and you mentioned Salinas as one, and I think I might have heard the other, but let me just give you the opportunity to explain what those two paths are. Yeah, so in Salinas, I think because it's criminal liability, the court is very clearly relying on a combination of the spending clause to attach the condition and then the necessary and proper clause to enforce it because you can't do criminal under contract. But I think in this case, because we have civil liability, and it's this chain that runs down to the officers, you don't even need the necessary and proper clause. I think this is an unusually easy case because of the way that just sort of – The chain of privity is the second. The chain of privity is the second. So I think you could come at it either way. And, you know, I represent a private litigant. I don't really care which one you do, so long as you're reversed, of course. So do you view Louisiana's constitutional argument as turning on the contract analogy? I mean, do we have to sort of accept that the spending clause and spending clause legislation is subject to characterization as a contract in order to buy their argument? I'm not sure. Maybe they can speak for themselves on that. I think the spending clause is properly understood as being the spending clause alone. I think it is consensual in nature. I think this Court has been clear about that. But then the question of – I just want to be clear about this. I mean, we've also expressed pretty significant, in many cases, doubts about whether the contract analogy totally governs. Yeah, and that's what I was about to say. This Court has also been clear, and they're not asking to overrule any of your precedents, that Congress can invoke the Necessary and Proper Clause to protect its spending prerogatives. I mean, look at our reply brief. We have the example of the statute that makes it a crime to arson a federally funded institution. That's the use of the Necessary and Proper Clause in conjunction with the spending clause, in which, as I understand their brief, they're saying that that's off the table. Whereas, I think what we're saying is because this is officers within the scope, it's a valid condition, and it's conduct that threatens the sort of core operation of the program, then it's just controlled by Salinas, and you don't need to break any new ground. So how much precedent would we undo if we held that RLUIPA's individual capacity cause of action for money damages is unconstitutional? I mean, is this a big deal case or not so much? I mean, I certainly think it's a big deal case. We've included, I mean, I think there are these, like, five or six precedents from this court that I just don't see how they can square their position with. Salinas, Hess, Laudani, Dixon, Grove City College v. Bell, and Sabry. And then just above and beyond the court's cases, I mean, we traced through a history of statutes that are similar to this, running all the way back to 1789, the first Congress imposed individual, that had a scheme for imposing individual liability on officers working in a federally funded state prison, False Claims Act of 1863, anti-kickback provisions that started in the 1930s, Title IX, Title VI, that's Grove City College v. Bell, Title X of the Public Health Act, EMTALA, there's whistleblower provisions, Prison Rape Elimination Act, the arson statute that we were talking about, there's another one about blocking interference to federally funded programs, so it's a long list of statutes. That could be imperiled. Yeah, where Congress has traditionally protected federal programs, and I think in particular imposed conditions and enforced them, as the people who are in this position of being in the chain of privity, they're officers, agents, employees, or subcontractors of the grantee. Thank you. Thank you, Counsel. Ms. Briggert. Thank you. Mr. Chief Justice, and may it please the Court, RLUIPA clearly authorizes individual capacity damages suits against state officials. TANZAN held that RFRA authorizes individual capacity damages suits against federal officials, and RLUIPA is RFRA's sister state agency. Congress used materially identical text in RLUIPA to provide the same remedies as RFRA against state officials. Respondents resist that simple conclusion because RLUIPA was enacted under Congress's spending power. But RLUIPA's language puts states on clear notice that state officials can be sued for damages in their individual capacity. And under the spending and necessary and proper clauses, Congress can create personal liability for state officials acting as agents of the state when they violate conditions on federal funding. Indeed, Salinas and Sabri upheld more expansive uses of Congress's power to impose criminal liability. I welcome the Court's questions. Well, let's say that the state is under clear notice. Is the Guard also privy to that clear notice? So, Justice Thomas, we don't think clear notice is required under the purpose of the spending clause because we care about the notice of the recipient, but I think the officers here clearly had notice, and I do think that qualified immunity... Okay, so how did they get that notice, and what was the notice? Well, I think the statute clearly applies to them. If you look at, you know, petitioner's counsel emphasized the text of the cause of action, it applies to a government defined as an official. Do you think they were aware of the state's commitment to the statutory requirements? I think that we're all sort of held liable for what's in the United States Code, and I think that this isn't surprising to state officials. So you think you have clear notice of everything that's in the United States Code? Well, Your Honor, I think that the officers here clearly had notice. Officers are used to facing 1983 liability and are liable for violation of all constitutional provisions. They know that certain requirements apply to them when they accept employment in a federally funded prison, and I do think that qualified immunity is an important backstop because they can only actually be held liable if their conduct violated clearly established law. And they concede liability, right? I mean, in other words, they concede that these substantive provisions apply to them, so they must then know or, you know, their response was not, we didn't have notice that we had to behave this way. Their response is, you can't sue me individually for damages as a result of that. Exactly, Justice Jackson. At page 46 of their brief, respondents admit that they are bound by the substantive condition. I think that that makes this a very easy case for purposes of the spending clause issue because they admit they can be sued in their official capacity for an injunction. I think that means, as Petitioner argued in his brief, and I don't take respondents to have disputed, that respondents could be held for contempt, and that can have personal consequences. I'm sorry, finish your question. Oh, they could be held for contempt, and that could have personal consequences. So I think that the necessary and proper clause, if it means anything, it can mean that Congress can go one half step further and say that we can reach these people in their individual capacities as a necessary and proper means to enforce the substantive condition of RLUIPA. Well, I think the necessary and proper clause may mean other things, even if you're right. So in light of what you said, your answer to Justice Barrett's questions is yes, right? They could be held liable whether they know, whether they don't know, quite across the board. For government officials, yes. As to the hypos, I think that one of Justice Gorsuch's hypos, which Justice Barrett followed, might have included private parties. The government doesn't take a position as to how this would cash out in terms of private parties. I think, as Petitioner's Counsel noted, I think there's obviously different issues of consent, especially when we're talking about reaching a member of the general public. But in terms of reaching government employees and agents, we think that they can clearly be reached. I do agree with him that... So even though we require pretty expressed consent by a state before they're bound under the spending clause, we don't require that with respect to the individuals? Your Honor, no. I think what matters for purposes of the spending clause is clear notice to the states who accepted funds. And again, this isn't surprising to individual officers. So you're saying, does the same standard apply to the individual employees? No, I do not think under the spending clause that they need to have clear notice. That's got to be the implication of your position, is that both clear notice and consent, this Court has said time and time again, are required for states to be bound. And you're saying neither of those apply when it comes to state employees. So I guess I should clarify my answer that I do think it depends on what power the Court relies. I think if the Court were... Spending clause. If the Court were to say only the spending clause, then I do think that you would have to have consent of the state official, and I do think we have that here. Whoa, whoa, whoa. Let's back up. We're talking about a spending power statute, okay? And everybody has to agree, I think, that consent and notice are required. For a state to be bound, right? Yes. And are you saying those are or are not required for the state employee to be bound? So under the spending clause, I think that the sort of privity argument that we've been talking about today... Right, so no is the answer, because it works for the state, and because the state employs these individuals, they're necessarily bound. I do think that's right, and I think that's... So no consent and no notice is required for the employee. That has to be the logic of your view. I think not as a formal matter in terms of under the spending clause, but I think the reason that this is such an easy case under either the spending clause... Okay, so what do we do if that's true, and I think it has to be, you're right, and I appreciate the candor, with the fact this Court has always said that, you know, contract is the analogy. And it's certainly true that an agent is liable to his principal for violating the principal's rules, here the employee to the state. But it has never been the case, well, never may be strong, but certainly if I look at the restatement, an agent isn't responsible to a third party with whom the principal has a contract. Privity doesn't run like that. It runs between the principal and the agent, not a third party. What do you do about that? Yes, Justice Gorsuch, well, I would strongly resist that the contract analogy applies to answer every question that arises in the spending clause legislation. Okay, that's an answer, just ignore the contract analogy. Well, I think that, well, I think what the Court's cases say is that the contract analogy is important for purposes of determining notice. It's did the recipient... Notice and consent, yeah. Did the recipient have notice? I think here it makes it an easier case under the spending clause, unlike all of the cases where the Court has considered, like in Medina. You're asking us to ignore contract principles when it comes to the employees, right? I mean, that has to be right. No, we just don't think that the contract analogy answers the question. We think the Court needs to sort of take through the constitutional analysis and ask, you know, is this a necessary and proper means of enforcing the substantive relief of condition? We think it is. We have to look outside the contract analogy because it wouldn't get to the employee here. It wouldn't. I mean, there's no privity between the employee and the federal government. There is not, but again, the necessary and proper clause gives Congress the power to enforce a condition that's validly imposed. So once we have a valid condition that has been imposed and to which the state consented, surely Congress can take the half step further to enforce that condition against the people who are most likely to violate it. Ms. Baird, so it sounds to me like you want to use the contract analogy to limit the scope of this argument because you keep saying, well, no, this is privity, this is privity, and that's why we don't need to take a position on whether it would reach a member of the general public, right? But then you're moving away from the contract analogy when Justice Gorsuch is asking you about, well, do these principles of contract law apply? I don't understand. It seems like we're slipping in and out of the contract analogy. Yeah, so let me try to be clear, Justice Baird. I think that the contract analogy applies to determine whether there is notice. I think this Court's cases are clear that the notice that matters is the state's notice. I do think that the officers can be fairly held to account for notice here. I think under the spending clause alone, this is an easy case because officers consent to work at a federally funded state prison. I think when we add in the necessary and proper clause, the farthest this Court has ever gone is Sabri, which reached a member of the general public. There was no consent there. I think that the necessary and proper clause allows Congress to enforce valid conditions. There may be hard questions about can Congress impose the condition in the first place, but I think once Congress has imposed the condition, and again, respondents don't dispute that they're bound by the substantive RLUIPA condition, and courts of appeals have upheld the substantive condition under the spending clause, Congress can go one half step further and enforce it against individuals. That half step has to include members of the general public because you're relying not just on the contract because the answers about the contract are that it does not need to give clear notice to the employee. So they're getting their notice from the statute, right? Yes, I think they have notice from the statute, and again, I think qualified immunity is an important backstop for officers. I guess what I would say about members of the general public is I think conceivably, and the reason we're not taking a position on sort of how this non-party liability issue cashes out there, because I think there conceivably could be different analysis under the necessary and proper clause. I think here, it's necessary... What would that analysis look like? Well, so let me just walk through what the analysis is like for individual officers, and then as I'm doing that, I think we can sort of see how it would be different. But here, it's necessary to enforce it against individual officers because otherwise the condition would go unenforced in a significant category of cases, and the facts, as alleged here, are a good example of that. Facts of one-time abuses... You can finish your answer. Thank you, Mr. Chief Justice. That Congress clearly had on its mind in RFRA and RLUPA, you know, the destruction of a Bible, et cetera. It's also proper because this is a long-standing traditional remedy, and it's against state officials who are most likely to violate the condition. These are the people through whom the state acts. The state otherwise doesn't act but through its officials, and so I think that necessary and proper analysis could look a lot different when we're reaching a member of the general public, and I think there could be other safeguards. I mean, there are other limits on spending clause power, too, and I think those would equally apply. Thank you, counsel. Justice Thomas? Justice Alito? In determining whether there was clear notice, what is the relevant point in time? So I think it would be what is the notice as provided by the statute. In Medina, I think it was footnote 8. The court said we care about notice as provided by Congress. Now, what date? What is the date? So when RLUPA was enacted in 2000. It's not the point at which the state accepts the money? Yes, but I think so. So, yes, we care about the state's notice at the time they accepted the funds. What is the relevant date there in this case? RLUPA is tied to all sorts of federal funding, and so I don't have a specific date on which they accepted funds, but I imagine they're continually accepting federal funds. You can go to usaspending.gov to see the different funds that they receive from the government. Was it clear before Tanzan? Yes, I absolutely do think it was clear because Tanzan is illustrative. I think Tanzan is helpful for us because it shows why the textual analysis comes out the way it does. I don't think it was necessary. Even though all the courts of appeals had gone the other way, and even without Tanzan, you think it was clear? I would say so, Justice Alito, and here's what I would say. I mean, in talking about the courts of appeals decisions, yes, they've all gone the other way. I agree with Petitioner. Not all of them said that the statute wasn't clear. I think that really there's no sort of how lopsided is the circuit split rule. It's odd to think that at time zero, a statute could not provide clear notice or could provide clear notice, but then at time one, when all of the circuits have gone the other way, it doesn't provide clear notice. There's just no administrable way to administer that rule. Tanzan was decided, I think, 18 days before the event in question here, and maybe General Aguinaldo could answer the question, but if funds were not received after that date, doesn't that make it more difficult? I don't think so, Your Honor. I think that timing is right from what I understand the allegations to be in the complaint, but, again, I don't think the argument depends on Tanzan. The notice that we care about is the notice that's provided by Congress, and text is the only reliable indicator of meaning. The other thing I'll say is sort of just as a basic principle, when Tanzan interpreted RFRA to make clear that individual capacity damages are available under RLUIPA II, that's not just what RLUIPA meant post-Tanzan. That's what RLUIPA has always meant. That's RFRA. I understand the point. Could you address Justice Gorsuch's hypothetical about the coach? Let's just take that as an example. What is the position of the United States regarding that situation? Assuming the coach is a public entity and the coach is a government employee, yes, there could be a cause of action there, but, again, I think the difficult part, and I'm not going to fight the hypothetical, I think yes, but the difficult part is can Congress impose the condition in the first place, and there are serious limits on what Congress can do under the spending clause. There's not just dole, but there's other principles that the court has laid out. Yeah, and what would be, that's what I'm asking, what would be the limitations? Sure. So there's several. I mean, the dole factors, obviously, there's constitutional. Well, would the dole factors be met in that situation? Well, you know, I don't want to take a position on sort of the outer reaches of the spending clause because this case is really about enforcement, and so I don't want to get ahead of the United States on very difficult questions about how far does the spending clause go. I think the important thing is that there are limits. The dole factors, there's the unconstitutional conditions doctrine. Congress can't condition funds on someone giving up their constitutional rights. There's coercion. And then I think the remedy itself has to be constitutional. It has to comply with due process. And then as I was talking with Justice Barrett about it, it also has to be necessary and proper. So there may be some instances in which a remedy is not necessary to enforce a condition or a proper means of enforcing the condition, and those requirements can have teeth. Well, you're asking us to take an important step. It would be helpful if we had an idea about where this road is leading, but you don't want to provide an answer to that. Well, Justice Alito, I think because it's not presented in this case. I think that when the court has a spending clause case about how far Congress can go in imposing the condition, then I'm sure we'll be up here as a party talking about that with you. I think that the United States hasn't sort of taken a position on that. How often has this court felt that Congress has imposed an impermissible condition under the spending clause? I mean, NFIB is an example. What else? Alliance for Open Society. There's a First Amendment violation there. There are real limits. I think in Prince said that there was a necessary and proper case, said that it wasn't a proper means of enforcement. So I think that the court can, if it wants, address that in a separate case. I think really the question here, and I'm not trying to frustrate the court, but the question is really just can Congress enforce a condition that is validly imposed? The hard question in Your Honor's hypothetical is whether Congress can impose the condition, and at page 46 they admit that they are bound by the condition. The only question is one of enforcement, and Congress can certainly, again, if these officers can be held for contempt and subject to personal consequences, Congress can surely hold them accountable in their individual capacity for damages, which everyone knows that that is what Ralupo was trying to do.  Thank you. Thank you. Justice Sotomayor? A new road by us would be to rule for respondent, correct? I would say so, Justice Sotomayor, yes. It would put at risk dozens of federal statutes, correct? I think so. If the court says that neither through the spending clause or the combination of the spending and necessary and proper clause Congress can't do this, then I think that would be groundbreaking, yes. Similarly groundbreaking is the requirement that somehow when individual damages are at risk that Congress has to be more specific than using appropriate relief, because we've approved damages under appropriate relief in other statutes, haven't we? And Franklin's a good example of this, because in Franklin there was not even an express cause of action, so if we're concerned about clear notice and what clear notice is, here we have an express cause of action that expressly applies to these officials and expressly provides for appropriate relief. Thank you, Justice Sotomayor. Ms. Cave? When you just said, Ms. Baird, groundbreaking, could you hum a few more bars on that? I mean, groundbreaking how? Groundbreaking what would happen, what would follow? Sure. Well, I mean, I think petitioners briefly laid this out nicely, but there's sort of a long history of Congress being able to reach outside of the strict privity between the federal government and an entity that receives funds. I think all of that could be called into question. I think we cited some sort of on-point statutes in our brief where employees or agents can be held liable. That's the Federal Nursing Home Reform Act, EMTALA, Title X. And then I think if the court accepts respondents' arguments on the constitutional issues, I think that could call into question Section 666, the bribery statutes, and sobriety. I think that this case is such an easy case because this case does not even approach the outer limit that this court has recognized in sobriety as permissible. And I think all the court has to do, the court does not need to extend Salinas and sobriety. I think all it has to do is cite those cases, say that no one has asked us to overrule them. Salinas and sobriety, I mean, one of respondents' arguments is that those cases are different because the federal government's interest in funding was more directly involved and what they really were all about was ensuring that the federal government could make sure that the recipient didn't fritter away the federal government's own funds. So why is that true or not true? Yeah, so we would strongly resist that RLUIPA isn't about protecting federal funds. It absolutely is. The federal government gives money to prisons, to state prisons, on the condition that they won't violate religious free exercise. When they do that anyway, the government is not getting what it pays for, which is institutions that respect religious exercise. So I do think that this is about protecting the funds. I'll also say that in Salinas and sobriety, the court was concerned about more than just protection of the actual funds at issue, and I think you can see this because neither case required any nexus with the federal funds. It's most obvious in Salinas where the court there described the threat to the federal program was the deputy sheriff who was giving preferential treatment to the inmate. It was clear as day that that was the threat that the court was talking about, and I think here the federal program is similarly threatened when officers can violate conditions on federal funds with impunity. So in those cases, what the court was really saying is that the federal government has every right to deal only with institutions that are not generally corrupt, and here it's the same except the end of the sentence would be not generally rights violated. I think that's right, Justice Kagan. The federal government does not want to be a party to egregious violations of religious liberty like the facts alleged in this case. I mean, the federal government has the power when it says it's giving federal funds on the condition to enforce that condition, and the state can always say no. Thank you. Justice Gorsuch? I take your point that a holding that said that Congress could never pass a statute conditioning employees and making them follow RLUIPA because that would exceed necessary and proper bounds would be quite a holding. But the same would go for the coach, too. On the Title IX recipient, it would be quite a holding for us to say Congress couldn't do that. I take that point, but I think it would apply to the coach as well. And I also think it's very different to say whether Congress could or couldn't do it. It didn't provide the clear statement that's required, and there's nothing novel about that. We just did that last year in Medina, for crying out loud, right? Well, Your Honor. At the government's urging. Well, Your Honor, yes, I think that was right. All right, and then if you want to add, feel free. Oh, I was just going to say there's a really important difference between this case in Medina, which I've sort of mentioned a couple times, which is this case involves an express cause of action. So I think in Medina. I understand that. The question is to whom and whether there's clear notice. And simply saying it's not clear notice and there isn't consent, there's nothing novel about that. We did that in Dole. We've done that in Medina. We've done it not in Dole, but in a lot of other cases we've done that, right? I think that's right, but I do think there's clear notice here, Justice Gorsuch. I understand you think that. On the clear notice point, you say, well, it was obvious even before Tansin, right? Yes, Your Honor. What do we do about the federal government's representation in Tansin itself that RLUIPA does not clearly authorize these suits against individual employees? Yes, Your Honor, that's a fair question. So we were a party in Tansin. We took a shot at the text, what we thought was a good interpretation of the text. And admittedly, we had an interest there in defending federal officers against damages suits. But, hey, we lost, and we lost very badly. It was 8-0. That was RFRA, and absolutely you lost badly. But you said, with respect to state officials and RLUIPA, that it doesn't authorize. And now you're asking us to believe that it was clear, even though you got it wrong. So, Justice Gorsuch, we've taken to heart this court's decision in Tansin, and I think that Tansin's analysis really does help the court decide the question. It doesn't govern squarely, but I think it does illustrate why the text means what it does here. Justice Kavanaugh? You agree that the Spending Clause statute must unambiguously authorize damages in order for damages to be available, correct? Yes, I think that's the clear notice requirement. Okay, and do you have any differences with Petitioner on why you think this statute, RLUIPA, clearly authorizes damages? I mean, I think Petitioner put it about as good as I could. I think that it's really important to start with the individual capacity action. I think if you look at this text, it is clear as day that it applies to officials and their individual capacity. It applies to an official or any other person acting under color of state law. I grant you that if we were looking at appropriate relief in isolation, I think it would be a much harder question, but we're not. The question that Tansin started with, and I think the court should start with here, is who is the defendant? And that makes all the difference between Sosamon and this case, because in Sosamon, the context of a sovereign defendant, there's absolutely no history of that. Damages are extremely inappropriate against the sovereign, whereas Tansin lays out this history in a really helpful way. In the context of individual officers, damages are the norm. And I'm not saying whether I agree with this or not, but just to get the order of potential operations on the table, if we were to conclude that this statute does not clearly unambiguously authorize damages, that avoids all the groundbreaking issues that you've been discussing, correct? Well, I think you would also want to consider sort of downstream consequences with respect to RLUIPA. If the court says that the text is unclear. I understand that. My specific question was the groundbreaking consequences you were discussing. That would be put off for another day, correct? That might be. Even though you think, and I take your point, that's why I said I'm not saying whether I agree with this or not, there would be RLUIPA consequences. Yes, I think there would be RLUIPA consequences, because I think there would be a question about the alternative jurisdictional hooks of the Commerce Clause. I think you'd also call into question the alternative jurisdictional hooks in the land use context, because there would be a question of whether that interpretation governs those separate powers. And I think the court should just sort of follow the text where it leads. This is a legal question like any other legal question. We think the notice is clear. I do think that that would probably be less disruptive than sort of all of the other consequences I was talking about with Justice Sotomayor. Thank you. Justice Barrett? So I just wanted to clarify one point. You said that if there were not individual liability for damages available here, it would make it hard for the federal government to protect its money, because this was in response to Justice Kagan, if the federal government doesn't want to give money to prisons that are rights violators, essentially, right? But the federal government, we usually say in the Spending Clause context, that the remedy is for the federal government to pull the funds, right? So it could do that. That is an option, Justice Barrett, I will say. And I'd have to go back to check every single case, but I believe that the cases in which the court has said that, there's no express cause of action. And so, yes, I think the court has said in a case like Medina, for example, when you're analyzing this hard question about can this right be enforced via 1983, I think there's a default presumption that Congress wants to enforce it by pulling the funds. But here, Congress made a policy choice to enforce it through creating a cause of action. And this isn't unusual. We all know what Congress was trying to do. It was trying to restore Priest-Smith Rights and Remedies, and that had long been available under the First Amendment through 1983. So I think Medina makes clear that it's a policy choice whether to create a cause of action. Congress has done that here, and we think that should be respected. So you think Congress couldn't pull the funds here? Oh, no. I think that that might be an option available to the federal government. We also have a cause of action for the federal government to enforce for LUPA through injunctive and declaratory relief. But I guess what I'm saying is that the fact that that's a usual remedy, the court has said that in cases without an express cause of action. And I think, you know, is that the usual remedy? Maybe in those cases, I don't think that's the usual remedy here because Congress told you how it wants to enforce. I see. Is there any daylight between you? The question the government always gets. Do you stand with the petitioner all the way, or is there any difference in your position? No, I don't think there's any daylight. There might be, like if you drill down, like there might be some small differences at the margins, but I don't think there's anything that would matter to the court's resolution of the case. And one other question. So there's been a lot of talk about whether there has to be clear notice in the contract to the employees or whether the statute is enough and the government and the petitioner say the statute is enough. But the statute could have, or Congress could in giving the funds, right, in the spending clause context, it could say to LDOC or whatever state prison system it's contracting with that it has to be a condition of the contracts that the guards would be liable or that individuals be liable for damages, right? Sure. I mean, yeah, petitioner has laid that out and says this can all be done through contract. We agree with that. But I don't think that that means that what Congress did here is impermissible. I think that there's clear notice on the text of the statute. I think how a state responds, how a Department of Corrections responds, I think they should inform their officers. There are briefs saying that officers are informed of the requirements that govern prisons. I do think that officers expect this. This isn't surprising. They're not some disinterested third party. These are people who work in prisons and know the conditions that apply to them. Thank you. Justice Jackson? So I guess I'm trying to understand how Congress could have said it any clearer. I mean, to the extent that we're puzzling over whether or not there's a clear statement in the statute, you know, it says a person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. If that doesn't refer to money damages being brought by an individual for a violation of RLUIPA, what could Congress have meant by appropriate relief here? I mean, we agree with you. We think it's clear, especially once you look at the definition of a government, appropriate relief against a government becomes, the word appropriate relief becomes clear in the context of who we're talking about here, which is individual officers. And even broadening out the lens more, I mean, RLUIPA is applying to prisons in a circumstance in which the PLRA and other statutes make it very difficult for prisoners to get any other kind of relief, right? I mean, they can't get injunctive relief in any sort of meaningful way. I think they could. I think prisoners could get injunctive relief under RLUIPA, and we would say that's another form of appropriate relief. But I do think that damages are necessary to complement, especially for instances like the one alleged here where there's a one-time abuse. I think it also comes up in cases of when claims for injunctive relief are mooted by release or transfer. Or transfer, which can happen all the time. Yes, very common. Okay. You've said many times that this is an easy case, and I think it's because of the privity argument. I'm trying to kind of puzzle through it. The state can say no to the condition in this situation. It has noticed it's a part of the agreement that the state makes to accept the funds, so it can say no to the condition that it must follow RLUIPA. But then we have this other layer, which is the employees, I suppose, can say no to a state that has agreed to the condition, right? I think that's right. They have a choice whether to voluntarily accept employment in a federally funded program. Against the backdrop of a clear cause of action against people in their position for violations of the law. Yes. I think the statute is clear as day that it applies to individual officers, and in that context, appropriate relief clearly provides that. And don't we ordinarily hold people responsible, especially officials, for knowing what the law requires and following it? I think that's generally a presumption that this court has endorsed, yes. Thank you. Thank you, counsel. Mr. Ardeniaga? Thank you, Mr. Chief Justice, and may it please the court. The court should resolve this case on either of two grounds. First, you should say, as Chief Judge Sutton has said both before and after Tansen, that RLUIPA does not clearly and unambiguously create an individual capacity cause of action for damages. Or, second, you should say, as Judge Sullivan has said after Tansen, that even if Congress spoke with unmistakable clarity and created such a cause of action, Congress exceeded its constitutional authority. But however you affirm the judgment below, it is extraordinarily important that the court reject Petitioner's attempt to radically expand congressional power. His view of the spending clause would mean that foundational cases like Pennhurst and Cummings were confused, Mr. Chief Justice, because Congress can actually impose spending conditions on non-recipients too. And his view of the necessary and proper clause would make Sabri look modest, Justice Thomas, because, on his view, Congress doesn't even have to pretend to be protecting federal dollars and cents from corruption before regulating members of the general public. Now, to be sure, I have a lot of friends on the other side of this case who have valid concerns about Congress's silence over the past 25 years when 10 federal courts of appeals have said that there's no individual capacity claim for damages under RLUIPA. But the solution is not to distort this court's existing precedents to try to change that status quo. It is instead to tell Congress to act exactly like it did in 1993 after Smith and in 2000 after City of Bernie, which is to pass new legislation, supersede SOSAMAN, and amend RLUIPA to allow for damages against the states. And then the states can decide, each state for itself, whether it accepts that express condition. The answer is across the street, not here. I welcome the court's questions. There's been quite a bit of reliance on Sabri and Salinas. Could you spend just a few moments giving us your argument as to why these cases aren't dispositive? Absolutely, Justice Thomas. So if I could give you the one sentence that I think might be the most important in this court's precedents for this case. That's the very last sentence of Section 2 in Sabri at page 608. This is the paragraph where this court in Sabri rejected Mr. Sabri's spending clause challenge. He said that this legislation is coercive. This court said, no, it's not spending clause legislation at all. This is not Congress's attempt, 666 is not Congress's attempt to impose its will on states' choices about public policy. It's instead Congress's necessary improper clause authority to basically target those who convert public spending into unearned private gain. That's the line that the Sabri court drew. And Justice Thomas, I think that is exactly the line, the framework that you should keep in mind when asking, what is RLUIPA? Is it more like 666 where you're targeting actual federal dollars and cents? Or is it like true spending clause legislation where what Congress is doing is imposing its own policy choices on the state recipients of federal funding? The actual dollars and cents weren't at issue in that case. What the court was upholding was the federal government's right to say we need some strings in place to ensure that the money we pay to a federal institution is going to an honest federal institution, an institution that won't be profligate with our money generally even though there's no nexus with the money here. And so, too, the government can say the integrity of the institution has something to do with not taking bribes, and the integrity of the institution has something to do with not violating rights. And both of those things fall within the federal government's interests. And respectfully, Justice Hagan, that's not consistent with Sabri. Look at page 606. This is the money is fungible paragraph that spans 605 to 606. The theory that the court was articulating there to sustain statutes like 666 is to say what is the articulated federal interest in the statute? And the very last sentence of that paragraph says the federal interest here are federal dollar thresholds that Congress embedded in the statute as its putative protection. Now, I'll grant you, Justice Hagan, that Sabri I think has to be the outer limit of the Congress's necessary and proper clause authority, because what it was doing there really had no direct tie to the funds at all. But the theory that this court cited in justifying reaching the result it did was to say we're going to look at the federal dollar thresholds in 666. We're going to say, well, Congress is at least pretending to protect those federal dollars. I'm sorry, but it's the same thing here, meaning they're trying to protect their federal dollars from not supporting a program that violates religious liberty. So I'm not sure that that distinction makes any sense to me. Your Honor, that's not correct, because there's a very important difference between Congress protecting its constitutional authority to spend and its constitutional… And it has constitutional authority to spend and give money to state prisons as well. I mean, it wasn't in those programs. It could spend on programs, but it didn't have to. But what Congress does not have inherent sovereign authority to do under the spending clause is regulate. The only way it can regulate is if the recipient of the federal funds agrees in return. But a criminal statute is regulation. It absolutely is regulation, Your Honor, but what I'm saying and what this court said in Sabri is that a statute like 666 is not a spending condition at all. And that's why I think the most important starting point in this court's analysis is to ask, is this a spending condition? The federal government agrees at page 23… Your Honor, we disagree with that. And I'm happy to take the disagreement, Justice Sotomayor, but I do think that that line that this court drew at the end of Section 2 in Sabri is the right way to think about this. Do you agree, General Aguinaldo, that as a spending condition, the federal government could have told Louisiana Department of Corrections that it had to include a clause in the contract telling individuals that they would be liable for damages? Absolutely, Your Honor. Why is this so different then? It's different because the word privity has been thrown around a lot on the other side of the case, and with all due respect, I don't understand that. When we're talking about consent in the spending context, you're asking whether the ultimate regulated entity has in fact consented to whatever the conditions are. In your hypothetical, Justice Barrett, I think you can conceive of Congress saying, we're going to require you to basically require a contract of assumption by your employees, where any time an employee comes into the state and says, I want to work for the state, the state says in response, if you're going to do that, you have to agree to these specific conditions that the federal government has imposed on us. There is nothing like that contract in this case, and that's why I think all of those hypotheticals at the end of the blue brief about how Congress could have created direct contractual privity between a state employee in his individual capacity and the federal government doesn't hold up, because at the end of the day, what they're saying, what they're telling you is what Congress could have done. You don't see that line here. Aren't they saying that if you have the contract and then you have the loop on the books, that the combination of those things essentially is the condition that the employees were aware of when they signed up for the job? Your Honor, that is not how this Court's Spending Clause case is conceived of consent. And I think every employee in the country would be shocked to learn that just by accepting employment with their employer, they have thereby personally bound themselves. What state remedies did these guards have? This was egregious. Is there a state RLUIPA? There is, Justice Barrett. And would that have provided relief to them if they had chosen to sue under it? As far as I can tell, they did not. They did not sue. Arguably, the answer would be yes, Justice Barrett. At pages 13 and 14 of our bio, we describe our law, which basically mirrors RLUIPA, expressly provides for damages, and that was available. That's available to all prisoners in Louisiana, and it's available even to non-prisoners in Louisiana. And it would submit money damages? It has money damages expressly articulated in the statute, Justice Barrett. Go ahead. Well, I was just going to say that that was certainly one remedy that was immediately available. I will say in terms of the broad scope of remedies available either to Congress, if it's unhappy with a state like Louisiana, or otherwise, the remedy… No, no. I mean, I understand that. I mean, I just really did want to know as a matter of state law. And then just out of curiosity, obviously, this is beyond the record. I mean, was there disciplinary action here? Do you know? So, it is outside the record, Justice Barrett. I can say the warden himself is no longer associated with the Department of Corrections. I mean, the surprise that you were saying employees would have, are they surprised to learn that they find themselves subjected to 1983 suits all the time? Well, Justice Kagan, Section 1983 is a remedy, right? It's a cause of action that gives a remedy. And your earlier question about can't you just do this all under 1983… I didn't say can't you do. What I'm saying is that your arguments that they're not getting noticed, that there's not enough knowledge, I mean, that would just make 1983 suits. The same objections could be held with respect to that. And yet, 1983 exists. People bring 1983 suits against state offices all the time, including to enforce statutes that have been enacted pursuant to the Spending Clause. That's right, Justice Kagan. And remember that when we're talking about 1983, the antecedent question, at least in the Spending Clause context, is whether the asserted right under the Spending Clause legislation is one that can be enforced in 1983. And I think the important point there in that antecedent question is the question we're dealing with in our red brief is can Congress use the Spending Clause to create a substantive right that runs against a state official in his personal capacity? And if the answer to that is no, then you never get to Section 1983. But didn't we answer that question in Tlefsky? I thought we said in the 1983 context that it didn't matter that it was Spending Clause legislation. We said a law is a law. And you secured by the laws of the United States include secured by laws enacted pursuant to the Spending Clause. That's right. And the question in this case is does Congress have constitutional authority under its Spending Clause power to do what petitioners say it did? No, but I'm saying why are you not undoing that Tlefsky holding with the argument that you're making today? Your Honor, because cases like Tlefsky are dealing with suits that are actually against recipients, funding recipients, right? I mean that's – nobody disputes that in the – That's just a distinction you're bringing in. What I think Justice Kagan was getting at is there's something about your argument that turns on this being Spending Clause legislation. And that that has something to do with the extent to which it can be enforced in this way. And we said in the context of 1983 that it didn't matter that it was Spending Clause legislation. And what she, I think, is trying to say is why should it matter here? And if it does matter here, doesn't that imperil the determination that we made in Tlefsky that Spending Clause legislation should be treated just like any other law for this purpose? Your Honor, it matters here because of cases like Cummings that trace all the way back to Pennhurst that say the very legitimacy of Congress' exercise of Spending Clause authority depends on that bilateral agreement. Is it sending money out and taking a reciprocal promise to comply with conditions in? If you're missing that reciprocal consent from a recipient or predated non-recipient… So what's your answer to the other part of this, which is do you dispute that the states have consented? I know they're not the ones that are being bound, but the first step is did they consent to follow RLUIPA? I have to be very precise about this, Your Honor. Yes, the state consented to RLUIPA's plain terms. When it accepted the money, it did. That's exactly right. And my friends love page 46 of our red brief. What we're saying there is that when a state official in his official capacity is working on the job, he is the state under this Court's common division between official capacities and individual capacities. And of course, state officials in their official capacities as the state are bound by RLUIPA. I'm sorry. Are you saying that this individual who represents the state on page 46 of your brief, you said he's bound by this statute, correct? Substantively as an official of the state. In his official capacity, of course. He is the state. Correct? And if an injunction issues, he could be held liable for violating that law, correct? Because it's an injunction against the state justice. But you're saying at the same time, that person who, the warden, who is cutting the individual's hair, should know that that's a violation of the state for which an injunction should be liable, but he shouldn't know that he's liable for personal damages too. That's what you're saying. Your Honor, that's what 10 federal courts of appeals have said. Well, that's what they said, but as the other side pointed out, they didn't start with the first question, which is, is this statute clear that there's an individual cause of action? Yes, it does make that clear. And is it clear by using appropriate damages clear that it includes, appropriate relief that includes contract damages? In Tansen, we said yes. So, whether they're right or wrong, it's irrelevant. If we assume that the law says what it says, how do we say that official acting as a person knows one thing is wrong for the state, but it's not wrong for him to do, or her? So, Justice Sotomayor, I think that goes back to an earlier question Justice Alito asked of the federal government, which is, what perspective are we looking at? I was surprised to hear the federal government say, you look at the time of enactment, when Arlington Central, Justice Alito's opinion for the court, and then Cummings, the Chief Justice's opinion for the court, said, you look at when the official is deciding whether to receive federal funds. So, frankly, that would mean that, do you know when they, I thought federal funds came every year. And that's my point, Justice Sotomayor. For every year, they know that they're bound. So, does it make a difference if we say, it's clear enough, but it wasn't clear to them at the time they took this action because 10 circuits were wrong, but moving forward, it's clear enough to anybody else that they shouldn't do it? That's the very last argument we put in the red brief, Your Honor, which is, if you disagree with everything else I say about the constitutional questions, then that, I think, has to be the answer. And I will say, it's not just what has happened. It's a form of qualified immunity, you're arguing. What I'm saying, Your Honor, is that between the year 2000 and Tanzan, I think, certainly, we have this huge body of RLUIPA precedent that would have put no state prison on notice about prison officials being liable in their individual capacities. How many of those cases were post-Tanzan? Tanzan was 2020. We have this case. But how many of those were post-Tanzan? I believe we have about four circuits post-Tanzan, Your Honor. And that includes Chief Judge Sutton in the Lee v. Odomson. That includes Judge Sullivan in the Tripathi case out of New York. And the other thing I was going to add to that answer, Justice Sotomayor, is that I'm happy to rely on the body of RLUIPA precedent, but in the spirit of footnote six in Sosomon, which looked at pre-RLUIPA precedent, we have four federal courts of appeals even before RLUIPA saying this sort of cause of action for damages, that's not a thing under the spending clause. Don't we have a number of Supreme Court cases that allow for spending clause statutes to bind non-recipients? Your Honor, the best – I believe the only example you saw in the yellow brief was the Franklin case where my friend said that the 11th Circuit had a pre-existing case on the books that controlled the answer. What about Grove City? Your Honor, I don't recall the history behind Grove City, but I guess what I'd tell you is that this is an extraordinarily unique context where you have federal courts of appeals, on-point precedents, both before and after RLUIPA's enactment, that are unanimously telling any state operating within the regional borders of those circuits, this is just not a thing. So are you distinguishing Salinas, Sabri, and Dole? I mean, they were binding non-recipients, right? Your Honor, I want to resist the characterization of them as non-recipients because I think you talk about recipients and non-recipients when you're talking about spending clause legislation. 666, all of those cases, that's not spending clause legislation. That's what this Court said expressly at page 608 in Sabri. And so once you conceive of a statute like RLUIPA as spending clause legislation or not spending clause legislation, that's going to dictate which path, you know, Petitioner has given you, which path you choose. Assuming that spending clause legislation matters. I'm just – this is going back to the point with Justice Kagan. Assuming that it makes a difference that it's spending clause legislation, you say, then we can distinguish all these other cases. I think it has to matter, Justice Jackson. Even though we said it didn't in Pilevsky. Your Honor, this is – the only reason we're here today is because Congress used its spending clause authority to pass RLUIPA. Like, if it had never done that, we wouldn't be here today. And I think Petitioner has the burden to tell the Court, either you use spending clause authority or you use the 666. And spending clause legislation, it matters because that imposes a bar of clarity that usually is not imposed. So when we read the statute, we have to be cognizant of the fact that it was passed pursuant to the spending clause. And we have to say, is this clear enough? But that doesn't have anything to do with the questions that you're now talking about. Because once we get to this constitutional issue, we've already decided the statute is clear enough. And the question is only, could Congress do this? So I respectfully disagree with that, Justice Kagan, for this reason, which is Cummings reiterated that Congress only acts legitimately when it sends federal funds out and it gets a reciprocal promise to comply with conditions in return. Sure, you can say that that existed here as to the state, but you cannot say it with respect to the state official in his personal capacity. One, because he never received – with respect to 1983 suits, is that you can always say, oh, the state understood this, but the state employees did not. Now, in fact, that's not true as a factual matter. State employees are well aware that 1983 suits exist and that other federal remedies exist too. But the point that I'm making is that this RLUIPA is no different with respect to putting an employee on notice than a 1983 action is. And, Your Honor, I think if and when this Court gets a section 1983 action where the underlying – So you can strike that down too? Well, I think you're going to have a question, Justice Kagan, about whether Congress could use its spending clause authority to create the substantive right that runs against an individual person in its individual capacity. That's not a question the Court has answered. I would say, like, if you eventually have to answer it, I think the answer is no, because that just is completely contrary to how this Court has conceived of the spending clause and the contract analogy that undergirds it. To the extent we're talking about a contract analogy, an agent who knowingly violates a duty that the principal owes to a third party may be liable to the principal but not to the third party, right? That's correct. And the principal, as a result of the agent's misconduct, may be liable to the third party as well. That's absolutely right. In Justice Gorsuch, we have the example in the red brief of the agent who signs a contract on behalf of the principal. Even if our state prison officials had signed whatever spending contract under RLUIPA you want to pick on behalf of the state of Louisiana, contract principals would say, you're still not personally bound. That doesn't personally bind that agent. And so a fortiori, that's what we have here, is somebody who's not alleged to have been involved in the spending process whatsoever. And let me make clear – And whether Congress could provide clear notice and get consent from the employees, we don't have to decide that. That's exactly right. Whether that might be necessary and proper, we don't have to decide that. You could leave it for another day, Justice Gorsuch. No, but how about if we don't want to? Give me your best answer. Give me your best answer. As I'm hearing you, you're saying they can bind the state by giving the state money, but they can have abundantly clear notice. Every employee you have must abide by this statute. And if they don't, that individual employee will pay damages. You're saying that's not adequate notice. It's not adequate notice if the individual signs a contract with the state agreeing, because they didn't sign the contract with the federal government. Is that your argument, too? I'm not quite following that last part of the question, Justice Sotomayor. Assume that the hypothetical that the other side put forth, they could have had the government say to the states, tell every employee that they're liable to us if they breach this contract. So, Justice Sotomayor, if Congress passes a statute that says, states, if you take our funds, every one of your employment contracts has to tell the employees that they're liable. How about states that don't have employment contracts? States who just hire you, pursuant to a collective bargaining agreement, federal government can't say, you must tell every employee they're personally liable. Any contract the state enters into, if the state is the recipient of federal funds, and Congress says— Will the individual be liable if the federal law is that clear? Your Honor, I think Congress would have to tell the state, you have to flow down in those contracts all of these requirements, and then you get consent from whoever the contractee is. Do you want a piece of paper for people to know the law? Yeah, because under contracts, do you have to have it written down on a piece of paper? I thought you could make an agreement that wasn't expressed in that way. Justice Judd, in a jurisprudence based on consent, consent has to mean something. No, no, no, I understand. I understand. And the question I think that Justice Sotomayor is asking is, why can't that consent be demonstrated through the employment agreement? Whether the employment agreement has all the terms written down or not, why couldn't we have a situation in which Congress makes clear to the states that its employees need to follow the law or be held liable individually in this way, and then the states contract with individual employees who understand, given that agreement that is part of the law, that that's what they have to do. So Justice Jackson, I think in that hypothetical, you'd have a factual determination to make, which is what sort of notice was the employee on, what was written down or said in that contracting process. And your view is only if the state actually writes the terms into the employment agreement would there be sufficient notice to the employee, only if they write it down. Justice Jackson, I'm not wedded to the method of the notice. I'd like you to answer that question. If they wrote it down, is your answer that yes, then the employee could be held liable? If the contract says, by accepting employment, you're agreeing to abide by all of the terms of RLUIPA, which, by the way, includes money damages in your personal capacity, then yes. But we can't imply that that's the case, because there is a law that says that federal employees under this circumstance have to abide by RLUIPA. Because that is never how the court has constructed the spending clause analysis. Thank you. Counsel? Thank you very much. Justice Thomas, anything further? Justice Alito? Let me ask the same question that I asked the other side about the date. What specifically is the date we should look to? Your Honor, it's the date that the state received federal funding. Now, in a statute like this, I will be candid that it is difficult to pin down, because RLUIPA is agnostic about the source of federal funding. It says any federal funds that run. And so if you're talking about federal funding like Medicaid, which comes in basically monthly, weekly, that's the point in time at which you should look. Thank you. Justice Sotomayor? Justice Kagan? Justice Gorsuch? Justice Kavanaugh? You say RLUIPA does not unambiguously authorize a damages remedy. This is Justice Kagan's kind of bar of clarity point. The other side says the statute clearly authorizes individual capacity suits, so that traditionally has encompassed damages, and then they cite Tansin on top of that. And I just want to make sure I have your responses to that precise point. Sure, Your Honor. So a few things to say to that. I will say the one thing this Court recognized in the Sosimon case is that even if you get to the appropriate relief question, there are a number of ways you can infer what that term means. So, for example, we laid out in the red brief the fact that the Congress referred to injunctive relief with respect to the United States. There's different terminology like that. Another thing the Court credited as plausible was that the ordinary definition of appropriate relief is typically particularly equitable relief, not damages. That's plausible. The other way I would attack that, Justice Kavanaugh, is remember what the Court said in Sosimon and repeated in Tansin, which is that the term appropriate relief is inherently ambiguous and context-dependent. And I think the thrust of everything I've said today and what we say in the red brief is that the most important context here, at least for our purposes, is what constitutional authority was Congress using to actually enact this putative cause of action for damages. That's the point that Chief Judge Sutton made, and I think that's exactly the right way to think about the relevant context here. Thank you. Justice Barrett? Justice Jackson? Thank you, Counsel. Rebuttal, Mr. Tripp? Just a few quick points, Justice Barrett, to start with the question about mini RFRA. This is in our cert reply. The state's mini RFRA departs from the compelling interest test for prison safety or security regulations, so it wouldn't provide any relief. And obviously Congress wanted to have a nationwide remedy here. Justice Kavanaugh, to just respond to that last exchange, I hear no answer to the basic point that there's an individual capacity action. It is expressed on the face of the statute. And then as long as you just do what you normally do and ask what damages are appropriate in the context of individual capacity action, again, I still hear no answer. They're presumptively available under Franklin. That's an implied cause of action in a spending clause case, and they say damages are available. That's an arm. Tanzen explains, traces it all the way back through the history, and still there's no answer to the point that if you don't have damages in the individual capacity action, you get nothing. There's no such thing as an individual capacity injunction. It's the whole point. And again, if you don't have damages, like, look at the facts of this case. But think about what Congress that enacted this law was trying to do. This is exactly where they were trying to have accountability, and I think it's clear as day on the face of the statute. I think a lot of the questions go to notice. There are a lot of questions to notice. The notice is baked in. They admit there's sufficient notice to the substantive condition. The remedial condition is the very next section in the statute. Like, I don't understand any theory of notice where, as a state employee, you're bound by one page of the statute but not the next one. That doesn't make any sense. They are clearly on notice of both, and they are both, here it's the individual capacity action is clear as day, and then damages are just always appropriate relief in an individual capacity action. As every state prison official knows, because they face these kind of suits all the time, this is the norm for them. And, of course, you have an additional layer of protection on the notice side because qualified immunity applies. And, of course, we have an extraordinary case where not only was there clearly established law, but we provided them actual notice of it, and they still violated it. I think, really, at the end of the day, like, I'm still hearing ultimately no answer to Salinas, the Salinas, Dixon, Hess, Laudani line of cases, and the crux of those cases, again, the root of the power is that it runs consensually all the way down. There's contract. You take the job as a prison official subject to the law enforcement official in a federally funded prison. Of course you take it subject to the conditions that Congress has attached, and here has attached both of them. And I think, really, at the end of the day, what the case is fundamentally about is, has Congress actually succeeded in restoring pre-Smith rights and remedies? I think that's really the question. And I think there's no doubt that that's what Congress meant to do, and there's no serious doubt under this Court's precedence that that's constitutional. So we're asking the Court to reverse. Thank you, Counsel. The case is submitted.